HALE v. LAWRENCE.
THE AMERICAN PRINT WORKS v. LAWRENCE.

</div>

1. After a decision upon a demurrer filed in good faith, the settled practice now is to permit the party against whom judgment is given to amend his pleading or to plead anew, so as to submit his substantial defence.

2. An agreement between attorneys, that after judgment on demurrer the defendant "should have leave to amend his plea, such leave not to embrace the right to put in a new plea," does not preclude the defendant from applying to the court for leave to put in a new plea; its fair construction is only a limitation on the leave granted by *the agreement*. But leave of the court must be obtained to put in a new plea.

3. The court, in a proper case, will grant leave to plead the general issue after the overruling a special plea on demurrer, in a case where the general issue had been pleaded and withdrawn by consent.

4. The judgment on demurrer is final and concludes the right of action, unless it is set aside and leave given to withdraw the plea or demurrer and to plead anew. If for plaintiff, it is *quod recuperat*, for defendant, *quod eat sine die*.

5. When judgment on demurrer is reviewed in a court of error, the judgment given should be the same as they decide ought to have been given by the court below, that is, a judgment in the cause for the plaintiff or defendant; but the court of error, after reversing a judgment, may, instead of ordering such judgment as ought to be given, grant leave to amend.

6. If a court of error, after reversing a judgment on demurrer, order judgment to be entered for either party, and remit the record of that judgment to the court below, it is not in the power of the court below to open that judgment, and give leave to amend the pleadings or to plead anew: the judgment is conclusive in the cause.

7. If a court of error, in reversing a judgment given on demurrer, merely reverse the judgment below, and remit the record without giving any judgment for the plaintiff in error, the court below may give judgment, or may allow the parties to amend or withdraw their pleadings.

8. If in such case the remittitur is filed in the Supreme Court on the last day of their term, concurrent with that of the Court of Errors in which the judgment is given, without the knowledge of the attorney of the defendant in error, he will not be in *laches* in not applying at that term for leave to amend.

---

These were actions in trespass, brought in this court.

The defendant in each of these causes, having pleaded specially in justification of the alleged trespass, the plaintiff demurred to the plea. The demurrer was overruled by this court, and judgment rendered for the defendant. (a) The cause having been removed into the Court of Errors and Appeals, the judgment below was there reversed, at October term, 1848, (b) and the record remitted to this court. The entry of the judgment and the remittitur is in the following words: " It is ordered and adjudged, that the said plea of the said defendant, in manner and form aforesaid by him above pleaded, and the matters therein contained, is not sufficient in law to bar or preclude the said plaintiffs from having or maintaining their aforesaid action against him, the said defendant. And it is further ordered and adjudged, that the record and proceedings therein be remitted to the said Supreme Court, to the end that the said court may proceed therein according to law. On

(a) See 1 *Zab.* 248.     (b) See 1 *Zab.* 714.

filing the remittitur in this court on the first day of November, in October term, 1848, the following rule was entered on the part of the plaintiffs: "On reading and filing remittiturs from the Court of Errors and Appeals in the above causes, respectively, it is ordered, that a writ of inquiry, to ascertain the plaintiff's damages, issue in the said causes, respectively, unless the defendant amend his plea within thirty days after notice of this rule." On the 30th of November, the defendant filed, in each case, the general issue and two special pleas in bar. The plaintiff, after the expiration of thirty days, sued out a writ of inquiry, treating the pleas filed by the defendant as a nullity. The defendant now moved that the pleas so filed do stand as pleas of record duly filed in the said suits, and that the order of this court for a writ of inquiry, and the proceedings thereon, be vacated and set aside.

Argued before the CHIEF JUSTICE, and NEVIUS, CARPENTER, RANDOLPH, and OGDEN, Justices, by *B. Williamson* and *Hornblower*, for defendant, and *W. Van Wagenen* and *Vroom*, for plaintiffs.

The CHIEF JUSTICE delivered the opinion of the court.

The material question is, whether the defendant is entitled to plead anew, or is limited to an amendment of the plea originally filed. Upon the solution of this question may depend, at least to some extent, the regularity and validity of the order of this court. I shall consider the defendant's claim to this indulgence, and the power of this court to grant it, independent of the rule itself, and of all the extraneous circumstances which, upon the argument, were relied upon as affecting the rights of the parties.

Upon general principles, wherever a demurrer is filed in good faith or for the purpose of settling a question of law involved in the controversy, justice requires that, upon the decision of that point of law, either party should be permitted to amend his pleadings, in such mode as to present for determination the substantial cause of action, or the real ground of defence. The object of pleading is not to defeat, but to advance the ends of justice; not to destroy, but to protect the substan-

tial rights of parties. In accordance with this clear and obvious principle, courts of justice have manifested great and increasing liberality in allowing amendments after demurrer. By the ancient practice, indeed, no amendment was permitted after demurrer without consent, upon the principle, that where a party had staked his rights upon a point of law, he was bound to abide by his election. In delivering the opinion of the court in *Bramah* v. *Roberts* (1 *Bing. N. C.* 481), Tindal, C. J., said, " The law of Westminster Hall, I believe ever since it stood in the place in which it now stands, has been, that if a party thinks proper to rest his defence or his case upon a point of law raised upon the record, he must either stand or fall upon the point so raised." And when the strictness of the ancient rule began to relax, it was gradually and with reluctant steps. It was *at first* required that the amendment should be made only while the pleadings were in paper, before the argument of the demurrer, *next* before the opinion of the court had been pronounced, and at length, before the judgment had been rendered. In modern practice, however, it is well settled, in accordance with sound principle, that amendments may be made even after judgment upon demurrer, whenever the substantial ends of justice require it. Such is the law of this court. The subject was fully and ably investigated by Chief Justice Hornblower on more than one occasion, and settled by the unanimous judgment of the court.

Leave to amend, it is true, is not a matter of right, but rests in the sound discretion of the court. Where, however, the demurrer appears to have been filed in good faith, and there has been no verdict upon an issue of fact, leave to amend is granted very much as a matter of course, wherever it is material to the cause of action or to a substantial defence.

In the present case the defendant justified under authority of a statute, which in its terms, at least, was a clear authority for the commission of the alleged trespass. The plea was filed in good faith. It was held by this court a valid bar to the action. There has been no affectation of delay on the part of the defendant ; on the contrary, very unusual concessions have been made on his part to expedite the cause. Under

these circumstances had the demurrer been sustained, and the plea adjudged insufficient by this court, the court by its well settled and uniform course of practice would have permitted the defendant to plead anew, either by amending the plea demurred to, or by adding such new pleas as might be deemed material to the defence.

It is insisted, however, that the privilege of amendment in this cause has been limited and qualified by the acts of the attorney of the defendant.

1. By an agreement, made by the counsel, and signed by the attorneys of the respective parties, bearing date on the 10th of January, 1848, after the judgment of this court had been pronounced, and prior to the issuing of the writ of error, it was agreed, among other things, " that the defendant should have leave to amend his plea, such leave not to embrace the right to put in a new plea." This clause, it is insisted by the plaintiff, is a stipulation on the part of the. defendant not to file a new plea, and limits him to a mere amendment of the plea upon file. But is this inference warranted by the terms of the agreement? The clause purports to be, and in fact is, an assent by the attorney of the plaintiff, not a stipulation by the attorney of the defendant. It is in terms an assent, by the plaintiff's attorney, that the defendant may amend his plea filed, accompanied by a qualification that the leave should not embrace the right to put in a new plea. But did his declining to give such consent take away the right of the defendant to ask leave to amend? Did it limit the power of this court to grant it? There is no stipulation, by the attorney of the defendant, that he would not ask for leave to file new pleas: and granting he had made such stipulation by which his client would be stripped of a substantial defence, to which he would otherwise have been clearly entitled, it might become a material question whether the court would enforce such agreement. But there is no necessity for entering upon this inquiry. The fair construction of the agreement, the natural import of its language is, that the plaintiff's attorney consents that the plea be amended, but he does not consent that any new pleas be filed. If that advantage is sought, the

order of the court must be obtained. The right of the defendant to amend by leave of the court, is in no wise affected by the agreement.

It is further objected, that the court will not grant the defendant leave to plead the general issue, because that plea has once been filed in the cause, and was voluntarily withdrawn by the defendant's attorney, by virtue of a written agreement between the attorneys of the respective parties. There is nothing in the mere fact of withdrawing a plea that should prevent the court from permitting it to be again pleaded, if the rights of the parties and the justice of the case require it. If the plea be withdrawn by the attorney for justifiable ends, or from misapprehension of the facts, or a mistaken view of his client's rights, the court would not permit the defendant to be thereby deprived of his defence. It becomes, then, material to inquire under what circumstances the plea was withdrawn. Thirty-three suits had been commenced against the defendant, involving claims for damages to a very large amount. In all of them the general issue had been pleaded, and also two special pleas in bar. In two of the causes replications had been filed to one of the special pleas, which led to an issue of fact. In all the cases there were important issues of law, the decision of which in favor of the defendant would conclude the rights of the parties. Upon those questions it was the design of both parties to take the opinion of the Court of Errors and Appeals. That could not be done until the issues of fact were disposed of and final judgment rendered. This would have involved the parties in the delay and expense of the trial of issues of fact, which in the event might have been rendered entirely unavailing by the decision of the Court of Errors upon the questions of law. By the trial of the issues of fact, moreover, all right of amendment under the demurrers would have been cut off.

It became, therefore, important to both parties, preëminently so to the plaintiff, whose right of action was seriously jeoparded by delay, being entirely contingent upon the defendant's life, to get rid of the issues of fact. Under these circumstances, it was agreed between the attorneys (by written direction of

the counsel) of the respective parties that the general issue in all the cases, and the statute of limitations in two of them, (that is, all the pleas which involved issues of fact,) should be withdrawn ; that the pleas should be held to be amended in the manner specified, and that either party should be at liberty to enter a rule for that purpose as by consent of parties. The amendments were made accordingly, and all the causes left to stand upon the issues of law. Now that these pleas were withdrawn for a justifiable, if not a laudable purpose, there can be no dispute. It facilitated the progress of the suits ; it saved expense ; it avoided delay ; it compromitted directly no right of the defendant, however prejudicial it might eventually prove to his interests. If the defendant's attorney, of his own motion and without the consent of the plaintiff's attorney, had asked leave to withdraw these pleas, the application would have been granted of course, as tending to facilitate the administration of justice. Nor would the withdrawal of the pleas under such circumstances have been deemed a waiver of any right of the defendant to renew these issues, if from the disposition of the issues of law such renewal became necessary to his defence.

But it is insisted that this plea was withdrawn by virtue of a written agreement between the counsel by whom the cause was conducted, and that that agreement possesses the force of a binding contract, which cannot now be violated or avoided ; that it was done at the instance of the defendant's counsel, and for his benefit ; that by it the plaintiff gained an advantage, of which he cannot be divested, and that, in the emphatic language of the plaintiff's counsel, the defendant must now " abide the curse of a granted prayer." Admitting all the facts to be as stated (which, however, is denied by the affidavit of the defendant's counsel), the conclusion attempted to be drawn from them is entirely unwarranted by any principle of law. Suppose the application to withdraw these pleas had been made by the defendant's attorney in open court, and with the assent and by the agreement of the plaintiff's attorney, there expressed verbally or in writing, it surely would not be pretended that that transaction constituted a contract

between the attorneys which could not be relieved against by the court, or that the arrangement partook of the nature of a binding contract between the parties? Now that the arrangement was made between the attorneys in vacation, and reduced to writing, cannot alter the nature of the transaction. It is simply the withdrawal of pleas by the defendant's attorney in vacation with the assent of the counsel of the plaintiff, an act which the court would have permitted in term, either with or without the consent of the plaintiff's attorney. The right of the defendant to an order of this court for leave to plead the general issue, or any other plea essential to his defence, is in no wise affected, either by the agreements of counsel or by the withdrawal of the pleas from the files of the court.

It remains to inquire whether this application has been made at the proper time and to the proper tribunal.

These causes were decided by the Court of Errors, at October term, 1848. The motion for judgment was made near the close of the term, on the eve of the adjournment of the court. The remittitur in this case (together with the remittiturs in thirty-two other causes) was filed in this court on the first day of November. This court was still open for the despatch of unlitigated common business, though the regular business of the term had closed, and no litigated matter could regularly have been heard, except by consent. The court actually dispersed on the very day the remittiturs were filed. The remittiturs were made in the absence of the defendant's attorney. Under such circumstances the defendant's attorney cannot be held guilty of *laches* in failing to make his motion for amendment in this court at that term. According to the general practice of the court, the remittiturs would not have been returned till the ensuing term. Conceding the plaintiff's right to expedite his causes to the utmost, the defendant's attorney could not reasonably have anticipated such unusual despatch. The plaintiff's attorney having, upon filing the remittiturs, ruled the defendant to amend his plea in thirty days, the pleas were actually filed within the time so limited. The defendant now stands before the court without prejudice from *laches* on his

part, or from the action of the court taken at the instance of the adverse party.

But have the court the power, in the present position of the case, to order an amendment? The single issue between the parties was upon a general demurrer to the defendant's plea in bar. This court overruled the demurrer, and gave judgment for the defendant; upon writ of error that judgment was reversed, and the record remitted. The power of this court now to permit an amendment depends upon the character of the judgment rendered in the court above.

Upon a demurrer to a plea in law, or to any other pleading in chief, the judgment is *final;* final, I mean, not as contradistinguished from a judgment *interlocutory,* but final, as it is conclusive of the question at issue. And in this sense the judgment is equally final, whether it be for the plaintiff or for the defendant, or for or against the demurrant. Its conclusive effect cannot be avoided, except by opening or avoiding the judgment. The principle is thus clearly stated by Judge Gould : " When the demurrer is joined on any of the pleadings in chief, as on the declaration, plea in bar, or other pleading which goes to the action, the judgment is final, *i. e.* if for the plaintiff, it is *quod recuperat,* if for the defendant, it is *quod eat sine die.* So that on demurrer to any of the pleadings which go to *the action,* the judgment for either party is the same as it would have been on an issue *in fact'* joined upon the same pleading, and found in favor of the same party. *Gould's Pl.* 477, § 42. See also *Ferrers* v. *Arden, Cro. Eliz.* 668 ; *S. C.* 6, *Coke* 7 ; *Hitchin* v. *Campbell,* 2 *Blac. R.* 831 ; *Bac. Ab., Pleas & Pleadings, I.* 13 ; 2 *Arch. Pr.* 36 ; *Arch. Prec.* 298–9.

And upon error brought from a judgment upon demurrer, regularly the judgment is in like manner final and conclusive. If error be brought by the plaintiff below, and the judgment be affirmed, it is simply a judgment of affirmance. If it be reversed, the court of error shall give such judgment as the court below ought to have given. The regular judgment ·of the Court of Errors in such case would be, that the judgment below be reversed ; that the plaintiff recover his debt or damages,

and that the record be remitted, to be proceeded in according to law.  If the action were debt, the judgment would be technically a final judgment, not interlocutory ; and no remittitur would be necessary, except for the purpose of having execution. But the judgment of the Court of Errors upon a demurrer, in an action sounding in damages, though interlocutory merely, is equally as conclusive upon this court and upon the rights of the parties as if the action were debt, the judgment final, and no writ of inquiry needed.

It is true that courts may and do permit pleadings to be amended after judgment upon demurrer.  But this end is attained either by not permitting the rule for judgment to be entered, or if entered by vacating it, or by treating the pleading and the judgments upon it as a nullity, and in theory at least, if not in fact, striking it from the record.  The court may thus deal with its own judgment, but by what authority shall it thus deal with the judgment of another tribunal ?  I am aware that in *The Utica Ins. Co.* v. *Scott* (6 *Cowen* 606), the Supreme Court of the state of New York held that an amendment might be made upon a remittitur after judgment in error upon a demurrer.  With due submission to that learned tribunal, I am unable to assent to the conclusion of the court, or to the reasons upon which it is founded.  The Court of Errors in that case had not only reversed the judgment below, but had rendered judgment for the plaintiff upon the demurrer (8 *Cowen* 727).  It must be admitted, therefore, that the case is an authority directly in point in support of the broad position, that this court may amend, even after judgment on demurrer in the court above.  But, so far as I am aware, the authority is a solitary one.  " It will be seen (say the court), by consulting the authorities, that courts have of late not confined themselves to cases where proceedings may be said to be in paper, but they have been guided by the question, whether substantial justice requires the amendment, *at whatever stage of the proceedings it may be moved.*"  The last proposition is certainly too broad. It admits, at least, of some qualifications, one of which, I apprehend, is the very case under consideration.  It can only be predicated with truth of proceedings before the same court

while they remain *sub potestate legis*.  The authorities, at least
so far as I have been able to consult them, do not show that an
inferior tribunal has the power to vacate or avoid the judgment
of a superior tribunal, in order to let in an amendment of plead-
ings.

Again it is said by the court, in the case referred to, that the
plea is to be regarded now as if it had been overruled upon the
demurrer in this court.  From that proposition I respectfully
dissent.  That, in truth, is the very point in question.  Can this
court treat a plea upon which judgment has been rendered in
a higher court, precisely as if it had been overruled in this
court?  I am of opinion that it cannot, and for the simple rea-
son, that it cannot get rid of the judgment of another tribunal,
pronounced upon the very plea which is sought to be amended.
If the judgment of this court overruling the demurrer had been
affirmed in error, there is no pretence that this court could have
permitted the plaintiff to withdraw his demurrer and plead
anew.  The court, then, could not have treated the demurrer
as if it had been overruled in this court.  And why not?  Sim-
ply because the judgment of another tribunal has intervened,
and the proceeding *quoad hoc* is not under the power of this
court.

But it may be asked, is the party to be placed in a worse
position by having the judgment of this court in his favor,
than he would have been had the judgment originally been
against him, in which event he would clearly have been en-
titled to amend.  Even if that were the necessary consequence,
it would by no means follow that this court could grant relief.
The defendant in error would then stand in no worse position
than the plaintiff in error where the judgment below is affirmed.
But I apprehend no such consequence follows.  Upon a reversal
of judgment upon demurrer, the Court of Errors may at their
discretion, permit the pleadings to be amended, or they may
remit the proceedings to be amended at the discretion of the
court below.  Of the power of the Court of Errors to permit
such amendments after reversal upon error, there can be no
doubt.  The judgment below being reversed, there can be no
objection in point of principle to the amendment, and there

Hale v. Lawrence.

are authorities to support the practice. *Hall* v. *Snowhill*, 2 *Green* 21; *Pease* v. *Morgan*, 7 *John. R.* 468; *Stokes* v. *Campbell*, 5 *Cowen* 21.

These cases, it is true, were in the Supreme Court, on error to the Common Pleas, where there was no remittitur, and the amendment, consequently, must of necessity have been made, if at all, in the court of error. They show clearly, however, the power of a court of error to order an amendment upon the reversal of the judgment below, and are in accordance with obvious principle.

In *Bloodgood* v. *The Mohawk and Hudson River Railroad Company* (18 *Wendell* 78), the plaintiff brought a writ of error to the judgment of the Supreme Court, overruling the plaintiff's demurrer to a special plea in bar. The Court of Errors, having reversed the judgment of the Supreme Court, and adjudged the defendants' plea not to be sufficient in law to bar the plaintiff's action, further ordered that the defendants have leave to amend their plea within such time as the Supreme Court might direct. Had the Court of Errors proceeded to pronounce judgment for the plaintiff, the right of amendment by the court below, I apprehend, would have been gone. I am of opinion that where judgment is rendered upon demurrer to any pleading in chief, and that judgment is reversed upon writ of error, and a new judgment rendered in the court above, either for the plaintiff or for the defendant, or where the judgment below upon demurrer is affirmed in error, this court has no power either to permit an amendment to the pleadings or to permit the demurrer to be withdrawn and a new pleading filed. I have discussed this question more at length than its importance in this case may require, because I deem it important that the principle should be distinctly settled, that no court has the power to permit pleadings to be amended while the judgment of another court, either superior or inferior, stands in force unreversed, upon those pleadings; and also because I wish to be distinctly understood as neither claiming nor admitting the right of this court, in any way or upon any pretence, to evade or to defeat the solemn judgment of a superior tribunal. I deem it of the utmost importance to the due admi-

nistration of justice, and to the harmonious action of legal tribunals, that each should confine itself within its allotted sphere; that due subordination should be strictly regarded, and the judgment of the superior tribunal faithfully enforced.

What, then, was the judgment of the Court of Errors? By the remittitur, it appears that the entry of the judgment in the minutes is as follows: " It is ordered and adjudged, that the said plea of the said defendant, in manner and form aforesaid by him above pleaded, and the matters therein contained, are not sufficient in law to bar or preclude the said plaintiffs from having or maintaining their aforesaid action against him, the said defendant: and it is further ordered and adjudged, that the record and proceedings therein be remitted to the said Supreme Court, to the end that the said Supreme Court may proceed therein according to law." The entry is certainly not in usual form, nor am I aware of any precedent or authority for such an entry. There is no reversal of the judgment below, no rendry of a new judgment in the court of errors; it is no fact, but a mere declaration of the opinion of the court upon the question of law involved in the demurrer. The judgment of the court cannot, however, be defeated by a mere clerical misentry; and so far as it can be ascertained, it must be enforced. There must have been, of necessity, a judgment of reversal. The omission to enter must be a clerical error. The omission to enter judgment for the plaintiff may or may not have been a clerical error. The Court of Errors, as we have seen, may, after reversal, either have rendered judgment upon the demurrer in favor of the plaintiff, thereby barring all amendments, or they may have simply remitted the record to this court, designedly leaving the judgment open, to permit this court to order an amendment or not, at their discretion. In the absence of any information to be derived from the entry, I cannot pronounce the omission a clerical error; but am bound to conclude that no final judgment was pronounced, or designed to be pronounced, by the court above, but that the matter was left open for the further action of this court. This view of the case is supported by the fact, that it is in accordance with a very usual, if not general practice of the Court of Errors of this

state. It is strongly corroborated, moreover, by the fact, that the counsel of the plaintiff in error, upon the return of the remittitur, ruled the attorney of the defendant to amend his plea, which would not have been done if the court above had rendered judgment for the plaintiff.

Regarding the judgment of the Court of Errors in this light, it leaves this court at full liberty to grant the motion for leave to plead anew, without in anywise transcending its proper powers or contravening the opinion of the Court of Errors.

I am, therefore, of opinion that the defendant is entitled to leave to plead anew, and that the pleas already filed do stand as the pleas in this cause, without prejudice to any question that may be raised touching their validity. The motion is granted upon the payment by the defendant of the plaintiff's costs upon the demurrer in this court, and also in the Court of Errors. I am further of opinion that the rule entered in the minutes of this court, at the term of October, 1848, for a writ of inquiry, was improvidently entered, and must, together with the writ of inquiry, and all proceedings thereon, be vacated and set aside, with costs. Let rules be entered accordingly.

CARPENTER and OGDEN, Justices, concurred. RANDOLPH, Justice, concurred in all the views expressed, except in regard to the construction to be given to the entry of the judgment in the Court of Appeals, and *quoad hoc deliberatur*.

NEVIUS, J. In these cases the defendant pleaded a statute of the state of New York, in justification of the trespass complained of, to which the plaintiffs filed a general demurrer. After argument in this court, the demurrer was overruled, and a writ of error was then brought to the Court of Errors and Appeals, and the judgment of this court reversed. The record having been remitted at the last term, a rule was entered that the defendant amend his plea in thirty days, or in default thereof, that a writ of inquiry issue to assess the plaintiff's damages. Within the time limited, the defendant filed three pleas, *viz:* the general issue, a plea of justification as a resident citizen of New York city, and owner of valuable buildings and other property there, and a plea of necessity. The

plaintiffs, without noticing these pleas, have issued their writs of inquiry, and the defendant now, on due notice, moves—

1st. To set aside these writs; and

2d. That the last mentioned pleas be ordered to stand, as pleas of record duly filed.

These motions are resisted, on the ground that these pleas were filed in violation of written stipulations between the counsel of the respective parties touching the mode of conducting these suits. These stipulations have been produced and read, and I will notice them, or so much of them as appertains to the above causes, in the order of their dates. The first bears date the 11th of August, 1847, and is signed by Mr. Van Wagenen and Mr. Hall, counsel of the respective parties, and therein it is agreed, that the plea of the general issue (which had been filed in the cases) should be stricken out, and that the causes stand on the special plea of justification, and the demurrer thereto, as the only pleas subsequent to the declarations. The second is dated on the 14th of September, 1847, and is signed by Mr. Williamson and Mr. Pennington, the attorneys on record of the respective parties, and thereby it is agreed, that the defendant be at liberty to withdraw the plea of the general issue, and the plaintiffs be at liberty to amend their demurrers, so as to conform to such withdrawal, and that the pleadings be held as so amended, and either party be at liberty to enter a rule accordingly, as by consent of parties. The third bears date on the 10th of January, 1848, and is signed by the attorneys on record, and therein it is stipulated, that writs of error shall be brought from the judgments of this court overruling the demurrers (which had then been rendered); and if those judgments were reversed, the defendant should have leave to amend his plea, but that such leave should not embrace the right to put in a new plea; and if the judgments should be affirmed, the plaintiffs might enter by consent a rule in this court, giving them leave to traverse and deny the plea of the defendant in an issue in fact.

These are the written agreements under which the plaintiffs claim the right to disregard the pleas filed by the defendant,

and to issue their writs of inquiry; and if they are such as the counsel might and did justly make, and if they were made in good faith and without fraud, and with a full understanding of their nature and operation, I see no reason why they ought not to be enforced. If they are lawful and valid agreements, they authorized the entry of the rule at the last term by the plaintiffs and the issuing of the writs of inquiry.

1st. Then, is it lawful for counsel and attorneys in a cause, by virtue of their general authority, to enter into written stipulations touching the conduct and management of such suit, waiving irregularities and dispensing with strict rules of practice? It is hardly necessary to cite an authority, or offer an argument to prove so well established a principle, as, that such stipulations may be made, that the parties to a suit are bound by them, and that courts will enforce them. I will briefly refer to a few cases. In assumpsit, the defendant pleaded the statute of limitations; the plaintiff replied; defendant neglected to join issue, and plaintiff's attorney entered a default, but afterwards agreed to waive it, and accept the joinder in issue. This he subsequently refused to do, but the court compelled him to abide by his agreement, against the consent of his client, and although it was a hard plea. 1 *Salk.* 86. The attorney's consent to an arbitration will bind the client. 7 *Cranch* 449; 4 *Wash. C. C. R.* 511. An attorney may make stipulations, waive technical advantages, and generally assume the control of the action. 7 *Cow.* 744. I need not multiply cases, the books are full of them. Such has been the practice in this court. 3 *Green* 102.

2d. Do the written stipulations, above mentioned, contain any matter which it would be unlawful for this court to carry out? I think not. They show that the pleas originally filed in these cases were the general issue and a special plea of official justification. The counsel agreed in writing that the former should be withdrawn. This they had a right to do, and it matters not at whose instance or for whose benefit it was done, or what motives led to it. After the judgments in this court, and writs of error were about to be brought, the same parties enter into another stipulation, that in case the

judgments should be affirmed, the plaintiffs might take an issue in fact upon the plea, or if they should be reversed, that the defendant might amend his plea, but not file a new plea. But it is said that this last stipulation gave to the defendant nothing more than he would have been entitled to under the law and practice of the court. Suppose it did not, it is not the less lawful and obligatory. But it may be said, with equal truth, that the plaintiffs got nothing more than they would have been entitled to by the same rule of practice. What, then, is the legal effect of this last stipulation? It is only to restrain the defendant from filing again the plea of the general issue, or any new plea, and permitting the plaintiffs to enter such a rule in vacation, in order to prevent delay. The rule entered, therefore, at the last term was in conformity with the agreement, and there is not in the agreement itself, I mean on the face of, or in the terms of the agreement, any thing unlawful, and which this court has the right to disregard or to refuse to enforce.

3d. The next question for consideration is, whether the plaintiffs (considering these stipulations) were bound to notice the new pleas filed by the defendant. They were not filed by the order of this court, and it was certainly not a matter of course and legal right to file them without such order; they were not filed pursuant to any agreement between the parties. How then, and by what authority do they get upon the files of this court? If they are new and distinct pleas, setting up new and distinct defences, then they are in violation of the agreement of the parties, made by their counsel, and the plaintiffs have a right to disregard them. Counsel should be held to their stipulations, unless they have been corruptly and fraudulently obtained. It would be unjust and oppressive to permit a departure from them, whenever counsel find their operation to be different from what they expected. The pleas filed in these cases are new pleas, setting up new defences, are contrary to the defendant's agreement, filed without the order of the court, and are such as, I apprehend, this court would have had very serious difficulty in allowing in this stage of the causes, even if there had been no stipulation to the contrary. Where a

plaintiff has distinctly set forth his cause of action in his declaration, the defendant and his counsel are presumed to understand his defence before he pleads; and if he has several defences, he ought to plead them all, as he may, by leave of the court. To permit a defendant to set up a single defence, and after being defeated in that on a demurrer, to set up another, and then another, to meet the same fate, until all are exhausted, would be attended with serious delay and expense to an adversary, and ought not to be permitted by the court. I think this stipulation ought to be enforced by the court, unless it is found on examination to have been falsely, fraudulently, or improperly procured by the plaintiff's counsel. And this leads to the consideration of the

4th. Question presented and discussed by the defendant's counsel, viz: that the stipulations were not made understandingly, but through mistake and ignorance, without consideration on the part of the defendant, and by contrivance of the counsel of the plaintiffs. These allegations by the defendant's counsel claim the serious attention and examination of the court, and the more especially, as the oaths of counsel on both sides have been resorted to for the purpose of verifying or contradicting them.

Let us look at the several branches of this charge.

1st. It is said these stipulations were made through mistake.

2d. From ignorance of the practice of this court.

3d. Without consideration on the part of the defendant. And,

4th. By contrivance on the part of the plaintiff's counsel; and this embraces a charge of malpractice and fraud.

I will consider these in the order presented, and in connection with the depositions taken on these motions.

And first, were they signed by the parties through mistake? The question naturally occurs, in what particular, contained in either of these agreements, could there have been a mistake. Was it a mistake in the defendant's counsel, when, on the 11th of August, he withdrew the plea of the general issue? If so, how came he, on the 14th of September, a month after-

wards, to renew the agreement, and either to ask the privilege, or yield, as he says, to the request of the opposite counsel to withdraw it? Or, we may ask again, how came he and his associate counsel, four months after the second agreement, to consent again not to file that plea, or any new plea? Here was time for deliberation, for inquiry, and consultation; and there was opportunity for such consultation, for the attorney in the cause was one of the practising lawyers of this court, and familiar with its practice. Did the counsel mistake the effect of withdrawing this plea, and suppose that he would be at liberty to plead it anew, whenever he found it expedient to do so? This would seem highly improbable, from the fact, that he afterwards restricted himself to an amended plea, and stipulated that he would not file a new plea. But if he was actually mistaken as to the effect of his stipulation, is it such a mistake as this court ought to correct? If we set aside this agreement on the ground of mistake, I can scarcely conceive a case of written consent between counsel that may not be set aside on the bare allegation of a mistake; by one or the other.

2d. The consent is sought to be set aside on the ground that the defendant's counsel was ignorant of the practice of this court. Of what practice of the court were they ignorant? It is the practice of this, and every other court, to permit counsel, by mutual consent, to enter into written stipulations touching the pleadings in a cause, if such stipulations do not contravene any principle in law, or encroach upon the jurisdiction or rights of the court. It is the practice of this, and all courts, to permit counsel, by mutual consent, to withdraw or substitute a plea, or file, or omit to file, a particular plea, under like limitations. These are the only rules of practice applicable to the cases, as far as I can see; and of these rules the counsel surely could not have been ignorant, for they acted upon them, both the counsel and the attorneys, to the latter of whom we would do great injustice were we to attribute ignorance of such practice in a court where they are in the habit of practising. The consents violate no rule of practice nor any principle of law,

Hale v. Lawrence.

and they are too plain in their terms to warrant the conclusion that the learned counsel did not understand them.

3d. The agreement is said to be without consideration. By this, I suppose is meant that the defendant, for his own stipulation, got no equivalent from the plaintiffs. If it were so in fact, can this court set it aside for such cause? The agreement may be good and binding, though voluntary and without consideration. It is a matter of no moment whether there is or is not reciprocity in the agreement. But who can say there was no consideration or reciprocity here? Can we say there was no rational or lawful inducement that moved the counsel to make such a stipulation? Can we say it was not to prevent delay, or to save expense, or to secure the affirmative of an issue, or that it was of no benefit or advantage (at least in the estimation of the party) to enter into such a stipulation? Can we say that the defendant has any other or better defence than he set up in his first plea? Is not the presumption of law, that he made his best and only defence in that plea? These and other questions of like import, we should be able to answer before we can adjudge that there was no consideration or inducement for this stipulation by the defendant. But if it were worth our while, we might inquire whether the leave to amend the pleas, was not a fair equivalent for the leave to take an issue in fact on the plea, if sustained by the Court of Errors, for each of the parties had, in my opinion, an equal right to ask of this court the privilege which was secured to them by the last stipulations, and the court would be under the same obligations to each to grant it. The great and prominent object intended to be obtained by both parties, as is apparent from the face of the stipulation of January, 1848, as well as from the depositions in the cause, seems to have been to facilitate the final hearing of the cause I dismiss this objection, as wholly insufficient to justify this court in disregarding or setting aside these consents or stipulations, and approach the more important question.

4th. Were these consents procured by the contrivance of the plaintiff's counsel, or through any fraud practised by him on the counsel of the defendant? To determine this, let us

look at the testimony in the cases. This testimony is of less importance here, than in other cases of like character, arising out of the same supposed trespass, and between the same counsel, and which have at the same time been argued before us, and are hereafter to be considered. I will, therefore, advert only to that portion of it which is applicable to the cases now under consideration.

The defendant's counsel, Willis Hall, esq., has offered himself as a witness, and says, " he is an attorney and counsellor, of the state of New York, and is of counsel with the defendant in these cases, and that B. Williamson, esq., is the attorney, and has heretofore acted by his advice and direction ; that Mr. Van Wagenen has acted as counsel of the plaintiffs, and had the management of the same ; that the consents above mentioned were entered into at the request, and for the exclusive accommodation of Mr. Van Wagenen, and drawn by him, or his procurement ; that the whole object of the consent of the 14th September, 1847, was (as he understood it) to withdraw all issues of fact, until an opinion of the court could be obtained on the demurrer, and that Mr. Van Wagenen appealed to him to withdraw the plea of the general issue, in order to expedite the causes, and that he might not be compelled to go before a jury, until the opinion of the court on the demurrer could be obtained ; that he received the impression from Mr. Van Wagenen, that issues of fact were to be tried before issues in law, though he cannot say, Mr. Van Wagenen told him so ; that before he assented to the proposition to withdraw the plea of the general issue, he submitted it to J. L. White, esq., who had drawn the special plea, and he having acquiesced, Mr. Williamson, the attorney, was directed to sign the consent ; that he believed it was the practice of this court, after a decision on demurrer, to allow a trial upon the merits of the case before a jury, and therefore he consented to withdraw the issues of fact ; that the consent of the 10th of January, after the demurrer had been overruled, was drawn by Mr. Van Wagenen, and presented to him for his signature, and was for Mr. Van Wagenen's accommodation ; that the objects of this consent were—1st, to set the causes down for hearing at the approach-

ing January term of the Court of Errors; 2d, that in case of reversal, like judgments should be rendered in like causes, in which the same counsel were concerned; 3d, that if affirmed, the plaintiffs might be at liberty to traverse and deny the facts; that these objects were urged by plaintiff's counsel to save time and avoid delay; and for the same purpose, it was also urged, that the defendants should have leave to amend, but not to file a new plea, and that a rule to that effect should be entered by consent, because if the causes were remitted to this court, as it did not sit till near three months after the Court of Errors, there would be great delay without such consent. To obviate delay, therefore, and at Mr. Van Wagenen's request, he yielded to such written consent. That, as he understood it at the time, the consent was, that if the demurrer was sustained, the plea should be amended, so as to obviate the objections, could it be so done; but if not, and a new plea should be required, that it could be done by leave of the court, and that he did not believe, at the time, such consent would restrain him from filing such new pleas, as, in the opinion of the court, would develop the merits of the cases; that upon any other view, he would not have agreed to such stipulations."

This is the substance of Mr. Hall's affidavit, so far as regards these two cases.

Mr. Van Wagenen has also presented his own affidavit, in which he says, " That shortly after Mr. Hall was charged with the management of these cases, on the part of the defendant, a verbal agreement was made between them, that each should furnish the other with copies of such pleadings as each might file in these and other cases between the same counsel, and arising out of the same alleged trespass; that, in pursuance of such agreement, Mr. Hall served upon him a copy of pleas filed in the case of *The Hamilton Company* v. *Lawrence*, which was one of the thirty-three cases to which the agreement extended, and stated to him that all the pleas were similar, and were about to be filed. These were the pleas of special justification and the statute of limitations, and these only. That a few days after, he (Mr. Van Wagenen) received from Mr. Pennington, the attorney of the plaintiffs, copies of pleas

filed in all the cases which had been served upon him by Mr. Williamson, the attorney of the defendant; that these were like the copy served upon the deponent by Mr. Hall, except that the plea of the general issue had been added; that, on receiving these copies, he filed a demurrer to the plea of justification, treating and naming it as the plea *secondly* above pleaded; that in an interview with Mr. Hall, on the 11th of August, 1848, the latter asked, what he meant by the terms " secondly " and " thirdly " in his demurrer, which led to an explanation, that the plea of the general issue had been filed by the attorney as the first plea; that Mr. Hall then objected to this plea, and complained that the attorney had filed it not only without his consent, but against the deliberate conclusion of both himself and Mr. White, the other counsel in the causes, made in the presence of the attorney, and said that their object in omitting the plea of the general issue was to secure the affirmative of the issue, and then asked the deponent the privilege of striking out that plea, using as an argument, that he had the control of the cases; that this request was granted, and the first written agreement was then drawn and signed; that soon after the paper was signed, Mr. White, the other counsel, came in, and being informed that the attorney had added the plea of the general issue, said, that the pleas had been carefully prepared, and expressed his gratification that the deponent had consented that the general issue should be stricken out; that, on the 7th of September, it was agreed, by deponent and Mr. Hall, that the plea of the statute of limitations, filed in the two cases now under consideration, should be stricken out, on the ground that they were not applicable, as the plaintiffs in these cases resided in New Jersey; and, on the 14th of September, the two consents of the 11th of August and 7th of September were combined in one, embracing all the thirty-three cases, and signed by the respective counsel, with directions to the attorneys to interchange consents, and have them carried into effect; that this consent was so signed by the attorneys, and filed on the 15th of January, 1848, and in pursuance of it the general issue was stricken from the record in all the cases, and the plea of the statute of limitations was

stricken out of these two cases, and the demurrer amended. Mr. Van Wagenen further testifies, that Mr. Hall repeatedly requested him, afterwards, to consent that the plea of the general issue might be again filed in case the demurrer should be sustained by the Court of Appeals, which he always refused to do; that both parties were, or professed to be, equally desirous to expedite the final hearing of these cases; that the written stipulation of the 10th of January was drawn up by this witness, pursuant to a verbal agreement previously had with Mr. Hall, and with a view, if possible, to argue the causes at the then approaching term of the Court of Appeals, and that part of it which gave the plaintiff liberty to take an issue in fact if the demurrer should be overruled, was inserted at the request of the plaintiff's counsel, and to obviate the delay of three months in applying to this court for leave to do so; that Mr. Hall declined signing this last stipulation, until he could consult with Mr. White, his associate counsel, which he did the next day, in the presence of this witness; and then, with the concurrence of both the counsel of the defendant, it was signed, and instructions given to the attorneys to execute it."

It is unnecessary to go further into the detail of the testimony of Mr. Van Wagenen. What I have cited already gives with sufficient particularity the history of these several stipulations, as understood by him. I will only add, that he denies, in the most explicit terms, that he requested the adverse counsel to withdraw the plea of the general issue, or that it was withdrawn for his accommodation, or that he ever supposed it was the practice of this court to try an issue in fact before an issue in law, or that he ever so informed Mr. Hall, or in any way intimated to him that such was the practice in this state. In a supplemental affidavit of Mr. Hall, he says, " that in omitting to file the plea of the general issue at the commencement of the suit, he did not suppose he would be required to go to trial without that plea under all circumstances and in any event, or that he precluded himself from an application to the court for leave; that he supposed the only consequence of not filing that plea, was the possibility of

being compelled, after a decision on the demurrer, to apply to the court for leave to file such a plea, if necessary to a full and fair defence of the case, which would be granted on such terms as the court might think equitable. Upon a careful examination of this evidence, I can find nothing in it to warrant the charge, that these several written stipulations, signed both by the counsel and attorneys of the respective parties in the cases now under consideration, were brought about by the contrivance, or by the fraud or misrepresentation of the counsel of the plaintiffs. The defendant employed two counsel in the city of New York (whose professional reputation is too well known to need an encomium from this court) to conduct his defence in these important cases. They assumed the responsibility, and employed an attorney of this court, favorably known as a successful practitioner, to enter the defendant's appearance to these suits, and under their direction, but in his name, as an officer of this court, to file all necessary and proper pleadings in defence to the actions. Mr. Hall, in his affidavit, alleges that the attorney in New Jersey acted wholly under his direction, and that he himself is responsible for what has been done on the part of the defendant in the prosecution of these suits.

The first point upon which these two counsel, whose evidence has been taken, come in conflict is the withdrawal of the plea of the general issue. Mr. Hall says it was withdrawn at the request of Mr. Van Wagenen, and for his accommodation. Mr. Van Wagenen says he never made any such request; but, on the contrary, his consent to permit it to be withdrawn was earnestly solicited by Mr. Hall; and he goes into a detail of circumstances, connected with the withdrawal, that tend strongly to carry the conviction that Mr. Hall is mistaken in his recollection of the facts. These are, that the pleas were prepared by the counsel in New York without the general issue, and served on the plaintiff's counsel, and sent to the attorney to be filed; that before they were filed, the attorney added this plea; that, on the service of another copy, the plaintiff's counsel prepared his replication to that plea; that both the defendant's counsel complained of an unwar-

rantable interference on the part of their attorney; that they assigned a reason why they omitted that plea, and he gives the reason. These facts, which do not depend wholly on the statement of counsel, tend strongly to prove that the gentlemen who had the control of the defence did not mean to file this plea, and that it was filed without their knowledge or consent, and it is reasonable, therefore, to conclude that it was withdrawn at their instance and for their benefit. But I apprehend it is not very material to determine at whose instance the plea of the general issue was withdrawn, (unless it is to meet the charge of contrivance, which implies corruption and fraud,) for both parties agreed to it, and expressed their assent in writing, and that upon more than one occasion. If both counsel agreed to it, and neither was guilty of fraud or misrepresentation, it can make no difference from which of them the proposal proceeded.

The next point in controversy between the counsel, arises upon the stipulation of the 10th of January, 1848, which provides, that in case the judgment of this court in these cases should be reversed on the writs of error, the defendant should have leave to amend his plea, but such leave not to embrace the right to put in a new plea. And in case the judgments should be affirmed, the plaintiffs should have liberty to enter by consent a rule giving them leave to traverse or deny the plea of the defendant in an issue in fact. The defendant's allegation is, that this, too, was procured by the contrivance or unfair practice of the plaintiff's counsel. There is no evidence to support such imputation. Five months before, the defendant had deliberately refused to file the general issue, and after it was filed by the attorney as deliberately withdrawn it, and rested his defence on the plea of special justification. The opinion of this court had been obtained in support of that plea; there is nothing unreasonable or surprising, therefore, that the counsel of the defendant should have been willing to abide by the substance of that plea, claiming the right to amend it in form, if it became necessary. This stipulation, according to Mr. Van Wagenen's evidence, (and which is not contradicted) was drawn by himself, and submitted to Mr.

Hale v. Lawrence.

Hall, who held it until the next day for the purpose of consulting his colleague, and after such consultation it was signed; that, at the time it was signed, one of the counsel remarked, that if the plaintiffs had leave to reply, the defendant should have leave to amend, and that this was agreed to, so far as regarded any technical matter, and after some question as to what might be esteemed technical matter, the counsel of the plaintiffs replied, that it did not extend to a new plea, when Mr. White rejoined, that they did not want to put in a new plea. But Mr. Hall says, he did not suppose the restriction against filing a new plea, would prevent him from applying to the court for leave to file such plea, if the development of the merits of the case required it, but thought that the only effect would be to prevent the delay incident to such application. Suppose this was Mr. Hall's impression, did he derive that impression from his adversary counsel? was it produced by his contrivance or his representations? This in not pretended, much less is it proved. No one who knows Mr. Hall will for a moment doubt the sincerity of his declaration; yet if it be true, as stated by Mr. Van Wagenen, that he made it a point in the presence of both the defendant's counsel, and had before insisted that no new plea should be filed, and that Mr. White at the same time declared he did not want to file a new plea, it is difficult to account for that impression on the mind of Mr. Hall, and more difficult to find the evidence of fraud and contrivance on the part of Mr. Van Wagenen.

I dismiss, therefore, this charge, as there is nothing in the nature of the stipulations themselves, or in the circumstances under which they were signed, or in the depositions which have been read, to sustain it. Ought this court, then, to set aside these stipulations, and declare that the pleas, which the defendant has filed in evident violation of them, should stand as pleas of record in the cases? I think not. I think the defendant should be held to an amended plea, if needful, and not be permitted to file a new plea, and that both the motions should be refused.

CITED in *Howe* v. *Lawrence*, 2 *Zab.* 113.